GLOCK, INC., Plaintiff,

v.

The WUSTER, Defendant.

CIVIL ACTION NO. 1:14-CV-0568-AT

United States District Court, N.D. Georgia, Atlanta Division.

Signed 03/09/2016

---

Eileen Elizabeth Hintz Rumfelt, Christopher Evan Parker, Miller & Martin, PLLC, Atlanta, GA, Julianna Ellen Orgel, Michael Ryan Patrick, Nicole Ann-Marie Spence, Scott C. Allan, John F. Renzulli, Renzulli Law Firm, LLP, White Plains, NY, for Plaintiff.

Kelly O. Wallace, Jamie Ponder Woodard, Wellborn, Wallace & Woodard, LLC, Jeffrey D. Horst, Michael Awni Boutros, Krevolin & Horst LLC, Atlanta, GA, for Defendant.

## ***ORDER***

Amy Totenberg, United States District Judge

This matter is before the Court on Defendant The Wuster's Motion for Leave to File a Third–Party Complaint [Doc. 92]. The Wuster's request comes well past the deadline for amending pleadings and joining parties set in the Scheduling Order. Indeed, fact discovery is now closed. For these and the other reasons detailed more fully below, The Wuster's Motion [Doc. 92] is **DENIED**.

■ Rule 16 requires the Court to issue a scheduling order that "limit[s] the time to join other parties, amend the pleadings, complete discovery and file motions." Fed.R.Civ.P. 16(b)(3)(A). "A schedule may be modified only for good cause and with the judge's consent." Fed. R.Civ.P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir.1998) (internal quotation marks omitted). Thus, when a party seeks to file a motion to amend after a scheduling order deadline, Rule 16 is the appropriate guide to determine whether the delay may be excused. *See Sosa*, 133 F.3d at 1417 n. 2; *see also Georgia Power Co. v. Sure Flow Equip., Inc.*, No. 1:13–CV–1375–AT, 2014 WL 4977799, at *3 (N.D.Ga. July 22, 2014).

■ The Scheduling Order in this matter, which the Court adopted on April 10, 2015, provided that most motions, including a motion to file a third-party complaint, must be filed within thirty days after the beginning of discovery unless the filing party obtains prior permission of the Court to file later. (Doc. 56 at 9; Doc. 60.) Pursuant to the Court's Local Rules, discovery commenced thirty days after the appearance of the first defendant by answer to the complaint. LR 26.2A, NDGa. The Wuster answered the Complaint on March 9, 2015, so discovery commenced on or about April 8, 2015 and any motion to file a third-party complaint was due on or about May 8, 2015. By that point in the discovery process, both parties had served their second sets of discovery requests (the first were served in jurisdictional discovery) and the responses were almost due. For all practical purposes, though, the discovery process was still in its infancy. Fast forward to today: fact discovery was extended but is now closed, and expert discovery ends on May 8, 2016.

Glock argues that the schedule for amendments to the pleadings set by the Scheduling Order could have been met had Defendant been diligent. Specifically, Glock argues that the dates on the invoices and packing lists offered in support of The Wuster's Motion for Leave to File a Third–Party Complaint demonstrate that "The Wuster was aware of the identity of the companies from which it had purchased the Airsoft Pistols at Issue at the time it filed its Answer." (Doc. 96 at 8.) The Wuster does not respond to this argument in its Reply. In fact, The Wuster offers no argument whatsoever as to why it did not file a third-party complaint earlier in this litigation.[1] Indeed, it would have benefitted The Wuster on multiple grounds to have done so. For example, the fact that three of the proposed third-party defendants are California corporations and that California's law on contribution and indemnity would be applied to The Wuster's third-party claims likely would have bolstered Defendant's arguments in its March 2014 Motion to Transfer Venue (which, obviously, the Court denied). (Doc. 50.)

Rather than attempting to justify its tardy filing, The Wuster spends most of its brief on the availability of contribution and indemnity under California and potentially federal law. Even assuming the viability of Defendant's third-party claims, though, The Wuster is still required to meet the Rule 16 good cause standard. In this regard, The Wuster deflects issues of diligence and focuses on the lack of any prejudice to Glock if the Motion were granted and some delay ensued. Defendant also avoids discussing the delay that is likely to arise in the service and assertion of jurisdiction over the three Taiwanese third-party defendants—if not all of the third-party defendants. Glock notes in its Response brief that Defendant "apparently intends to serve [the Taiwanese Defendants] via letters rogatory," (Doc. 96 at 6), and Defendant does not dispute this contention.

Defendant's only arguments with regard to the internationalization of this lawsuit and its potential to significantly delay the resolution of Glock's claims are:

1. "[T]here is no indication that any delay has resulted or will result in a loss of evidence, nor is there is any reason to believe the delay has caused or will cause evidence to be more difficult to obtain or that adding the third parties will increase Glock's costs to an unfair degree;" and

2. Any arguments against personal jurisdiction "would be baseless" as a result of this Court's prior Order (finding personal jurisdiction over The Wuster proper) and "the legion of stream-of-commerce cases" indicating that jurisdiction should lie over Defendant's suppliers. (Doc. 98 at 15.)

Defendant also offers "to stipulate that it will complete any discovery from third-party defendants within the currently established deadline for the completion of expert discovery between The Wuster and Glock—*i.e.*, May 8, 2016." (Doc. 92 at 3.) However, given the Court's experience with international litigation and, more importantly, Defendant's inability to stipulate on behalf of the proposed third-party defendants as to what they will seek in discovery, the Court doubts such a stipulation would be effective in preventing undue

---

1. The Court notes that the third-party complaint was filed very soon after The Wuster obtained new counsel.

delay while at the same time providing a full and fair adjudication of Plaintiffs claims and Defendant's proposed claims.

Defendant's back-up plan, which it has represented to the Court multiple times, is to "file suit against the diverse third-party defendants in this Court and move to consolidate the two as related cases." (Doc. 98 at 2 n.1.) A separate—even subsequent—lawsuit seeking indemnity and/or contribution appears to be consistent with California law. *See Cty. of Riverside v. Loma Linda Univ.*, 118 Cal.App.3d 300, 173 Cal.Rptr. 371, 378 (1981) ("A tort defendant's claim for comparative indemnity from a concurrent tortfeasor is separate and distinct from the injured party's claim against the tortfeasors and, therefore, the right to seek indemnity against a joint tortfeasor is not foreclosed by the injured party's failure to name him as a joint tortfeasor.").

Whatever the merit of its claims for contribution and indemnity, The Wuster has not met its burden of demonstrating that the schedule established by the Scheduling Order in this case could not have been met "despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418. Thus, they have not met the Rule 16 good cause standard. Fact discovery is now over, and the Court sees no adequate grounds for amendment of the Scheduling Order at this point under these circumstances. The Wuster's Motion for Leave to File a Third–Party Complaint [Doc. 92] is therefore **DENIED.**[2]

**IT IS SO ORDERED** this 9th day of March, 2016.

---

2. Should The Wuster file a separate lawsuit against its suppliers, it might consider filing in a jurisdiction where the defendants likely would not object to the court's personal jurisdiction.